## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| JACOB WHEELER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | **COMPLAINT FOR** |
| | ) | **VIOLATION OF THE** |
| MTS SYSTEMS CORPORATION, | ) | **FEDERAL SECURITIES LAWS** |
| DAVID J. ANDERSON, RANDY J. | ) | |
| MARTINEZ, NANCY ALTOBELLO, | ) | |
| DAVID D. JOHNSON, MICHAEL V. | ) | **<u>JURY TRIAL DEMANDED</u>** |
| SCHROCK, CHUN HUNG YU, and | ) | |
| LINDA ZUKAUCKAS, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Jacob Wheeler ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, inter alia, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action against MTS Systems Corporation ("MTS" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By this action, Plaintiff seeks enjoin the vote on a proposed transaction pursuant to which MTS will be acquired by Amphenol Corporation ("Amphenol"), through its

wholly owned subsidiary Moon Merger Sub Corporation ("Merger Sub") (the "Proposed Transaction").

2.      On December 9, 2020, MTS and Amphenol issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated December 8, 2020 (the "Merger Agreement").  Under the terms of the Merger Agreement, each MTS stockholder will receive $58.50 per share in cash for each share of MTS common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $1.7 billion, including the assumption of outstanding debt and liabilities, net of cash.

3.      On January 28, 2021, MTS filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that MTS stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the financial analyses supporting the fairness opinions provided by the Board's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Evercore Group L.L.C. ("Evercore"); and (ii) potential conflicts of interest faced by Company insiders. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming

stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and

where the evidence exists.   MTS maintains and operates a corporate office and manufacturing facility in this District.   Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

### THE PARTIES

9.     Plaintiff is a continuous stockholder of MTS and has been at all times relevant hereto.

10.     Defendant MTS is a Minnesota corporation with its principal executive offices located at 14000 Technology Drive, Eden Prairie, Minnesota 55344.   MTS maintains a corporate office in Swartz Creek, Michigan and a manufacturing facility in Rochester Hills, Michigan.   The Company's common stock trades under the ticker symbol "MTSC" on the Nasdaq Global Select Market.   MTS is a global supplier of advanced test systems, motion simulators and precision sensors.   The Company organizes and manages its operation in reportable segments: (1) Test & Simulation and (2) Sensors.

11.     Defendant David J. Anderson ("Anderson") has been a director of the Company since 2009.   Anderson also serves as Chairman of the Company's board of directors.

12.     Defendant Randy J. Martinez ("Martinez") has been a director of the Company since March 2014.   Martinez also has served as the Company's president and chief executive officer ("CEO") since December 2020.

13.     Defendant Nancy Altobello ("Altobello") has been a director of the Company since April 2019.

14.     Defendant David D. Johnson ("Johnson") has been a director of the Company since January 2013.

15.     Defendant Michael V. Schrock ("Schrock") has been a director of the Company since March 2014.

16.     Defendant Chun Hung Yu ("Yu") has been a director of the Company since January 2013.

17.     Defendant Linda Zukauckas ("Zukauckas") has been a director of the Company since April 2019.

18.     Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

19.     Non-party Amphenol is a Delaware corporation with its principal executive offices located at 358 Hall Avenue, Wallingford, Connecticut 06492. Amphenol's common stock trades under the ticker symbol "APH on the New York Stock Exchange.

20.     Merger Sub is a wholly owned subsidiary of Amphenol incorporated in Minnesota.

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

21.    On December 9, 2020, MTS and Amphenol jointly announced the

Proposed Transaction in a press release:

> WALLINGFORD, Conn. & EDEN PRAIRIE, Minn.--Amphenol
> Corporation (NYSE: APH) ("Amphenol"), a leading global provider of
> high-technology interconnect, antenna and sensor solutions, and MTS
> Systems Corporation (Nasdaq: MTSC) ("MTS"), a leading global
> supplier of advanced test systems, motion simulators and precision
> sensors, today announced that they have entered into a definitive
> agreement under which Amphenol will acquire MTS for $58.50 per
> share in cash, or approximately $1.7 billion, including the assumption
> of outstanding debt and liabilities, net of cash.
>
> "We have long admired MTS's technology and position across a variety
> of attractive end markets," said R. Adam Norwitt, Amphenol's
> President and CEO.  "This acquisition is consistent with our strategy of
> continuing to expand our range of sensor and sensor-based products
> across a wide array of industries to further capitalize on the long-term
> growth potential of the electronics revolution.  We are extremely
> excited about the strength of our combined product portfolio which will
> enable us to offer even more innovative technologies to our customers
> around the world.  I look forward to welcoming the talented MTS team
> to the Amphenol family."
>
> "Amphenol is a leader in interconnect and sensor technologies with a
> proven management team and a strong track record of successfully
> acquiring companies across its platform," said Randy J. Martinez,
> MTS's Interim President and CEO.  "MTS brings to Amphenol its high-
> quality technology solutions, a diversified customer base of blue-chip
> companies and a strong financial profile.  We could not be more pleased
> to join forces with Amphenol, which will allow us to continue to deliver
> exceptional customer experience through high-quality and innovative
> solutions."

David J. Anderson, Chairman of MTS's Board of Directors, concluded, "The MTS Board of Directors is pleased, as a result of its strategic review, to deliver MTS Systems shareholders the value inherent in this transaction. I have full confidence that, together with Amphenol, MTS will continue to engineer technologies that meaningfully improve and modernize the world's products – for the benefit of its customers – for generations to come."

MTS is organized into two business segments: Sensors and Test & Simulation. The Sensors segment represents a highly complementary offering of high-technology, harsh environment sensors sold into diverse end markets and applications, and positions Amphenol to have one of the industry's broadest ranges of sensors and sensor-based products. The Test & Simulation segment is an industry leader and Amphenol believes it represents an attractive business with excellent near and long-term potential. Accordingly, Amphenol plans to undertake a strategic review of the business to best position it for future success.

The acquisition of MTS is expected to be accretive to Amphenol's earnings per share in the first year after closing, with approximately $0.10 and $0.06 attributable to MTS's Sensors and Test & Simulation segments, respectively. This assumes the post-closing reduction of certain public company costs. The transaction will be financed through a combination of borrowings under Amphenol's existing credit and commercial paper facilities as well as cash on hand.

The transaction has been unanimously approved by the boards of both companies and is expected to close by the middle of 2021, subject to certain regulatory approvals, approval from MTS's shareholders and other customary closing conditions.

## Insiders' Interests in the Proposed Transaction

22. MTS insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for

themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of MTS.

23.    Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Amphenol/ The Merger Agreement, for example, provides that all outstanding options and restricted stock units ("RSUs") will vest and convert into the right to receive cash payments.  The following tables summarize the value of the Company options and RSUs that Company insiders stand to receive:

| Non-Employee Directors | Number of Restricted Stock Units [(#)(1)] | Value of Restricted Stock Units [($)(1)] |
|---|---|---|
| David J. Anderson | 7,976 | 466,596 |
| Nancy Altobello | 4,510 | 263,835 |
| David D. Johnson | 14,070 | 823,095 |
| Michael V. Schrock | 2,695 | 157,658 |
| Kenneth Yu | 2,695 | 157,658 |
| Linda Zukauckas | 2,695 | 157,658 |

| Executive Officers | Number of Stock Options [(#)(1)] | Value of Stock Options [($)(2)] |
|---|---|---|
| Randy J. Martinez* | 0 | 0 |
| Brian T. Ross | 30,090 | 222,769 |
| Steven B. Harrison | 16,480 | 203,788 |
| David T. Hore | 17,899 | 188,562 |
| Todd J. Klemmensen | 15,640 | 122,617 |

| Executive Officers | Number of Restricted Stock Units [(#)] | Value of Restricted Stock Units [($)(1)] | Number of Unvested Company options [(#)] | Value of Unvested Company options [($)(2)] |
|---|---|---|---|---|
| Randy J. Martinez* | 36,859 | 2,156,252 | 0 | 0 |
| Brian T. Ross | 25,097 | 1,468,175 | 14,142 | 151,034 |
| Steven B. Harrison | 36,085 | 2,110,973 | 13,878 | 216,947 |
| David T. Hore | 20,031 | 1,171,814 | 11,030 | 118,100 |
| Todd J. Klemmensen | 15,571 | 910,904 | 8,411 | 89,865 |

24.     The Company's named executive officers, moreover, stand to receive substantial cash severance payments in the form of golden parachute compensation if they are terminated in connection with the Proposed Transaction:

| Name | Cash ($) (1) | Equity ($)(2) | Pension/ NQDC | Perquisites/ Benefits ($) (3) | Tax Reimbursement (4) | Other | Total ($) |
|---|---|---|---|---|---|---|---|
| Randy J. Martinez | 1,440,000 | 2,156,252 | 0 | 0 | 0 | 0 | 3,596,252 |
| Brian T. Ross | 1,662,242 | 1,619,208 | 0 | 11,725 | 0 | 0 | 3,293,175 |
| Steven B. Harrison | 1,664,174 | 2,327,919 | 0 | 2,776 | 0 | 0 | 3,994,869 |
| David T. Hore | 1,680,048 | 1,289,914 | 0 | 30,834 | 0 | 0 | 3,000,796 |
| Todd J. Klemmensen | 1,236,229 | 1,000,769 | 0 | 1,593 | 0 | 0 | 2,238,591 |
| Jeffrey A. Graves(5) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

## The Proxy Statement Contains Material Misstatements or Omissions

25.     The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  The Proxy Statement, however, misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

26.     The Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the financial analyses supporting the fairness opinions provided by

the Board's financial advisors, J.P. Morgan and Evercore; and (ii) potential conflicts of interest faced by Company insiders.

***Material Omissions Concerning J.P. Morgan's and Evercore's Financial Analyses***

27.    The Proxy Statement omits material information regarding financial analyses.

28.    The Proxy Statement contains descriptions of the financial analyses prepared by both J.P. Morgan's and Evercore in support of their fairness opinions. By those opinions, each financial advisor opined that the deal was fair to the Company's unaffiliated stockholders, from a financial point of view.  When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be disclosed.  As such, a complete and accurate description regarding these analyses is both required and imperative.  The description presently found in the Proxy Statement, however, omits material information concerning these financial analyses.

29.    The Proxy Statement describes J.P. Morgan's and Evercore's fairness opinions and the various valuation analyses they performed in support of their opinions.  However, the description of J.P. Morgan's and Evercore's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, MTS' public stockholders

are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's and Evercore's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

30. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) MTS' terminal year unlevered free cash flow; (ii) the inputs and assumptions underlying the applied discount rates, which ranged from 9.5% to 11.0%; and (iii) the Company's terminal value.

31. With respect to J.P. Morgan's *Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed in the analysis; and (ii) the sources thereof.

32. With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the unlevered free cash flow for the Company's terminal year; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.5% to 11.0%; (iii) quantification of MTS' terminal value; (iv) the Company's estimated net debt; and (v) MTS' fully diluted outstanding shares.

33. With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

11

34.     With respect to Evercore's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed in the analysis.

35.     With respect to Evercore's *Sum-of-the Parts Analysis*, the Proxy Statement fails to disclose: (i) a quantification of the debt and debt-like items, including capitalized lease obligations and unfunded pension plans; (ii) cash projected as of October 3, 2020; and (iii) the Company's fully diluted outstanding shares.

36.     With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

37.     Full disclosure of the omissions identified above is required so stockholders can fully and fairly evaluate the extent to which they should consider the opinions and analyses performed by J.P. Morgan and Evercore in the overall context of deciding how to vote with respect to the Proposed Transaction.  Put another way, without this omitted information, the Company's stockholders are effectively precluded from determining the reliability of the financial advisors' respective analyses.  The omission of this material information violates the Exchange Act in that it makes the statements in the "Financial Projections" and

"Opinions of the Company's Financial Advisors" sections of the Proxy Statement false and/or materially misleading.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

38.    Another issue of both importance and materiality are potential conflicts faced by the Board and Company management.  The Proxy Statement fails to disclose material information about this important issue.

39.    The December 9, 2020 joint press release announcing the Proposed Transaction quotes Amphenol's President and CEO R. Adam Norwitt as stating, "I look forward to welcoming the talented MTS team to the Amphenol family." Similarly, defendant Martinez is quoted as stating, "[w]e could not be more pleased to join forces with Amphenol[.]"  Yet, the Proxy Statement fails to disclose whether any members of MTS management have secured employment with the combined company as well as the details of any employment and retention-related discussions and negotiations that occurred between Amphenol and MTS executive officers, including who participated in all such communications, when they occurred and their content.

40.    The Proxy Statement further violates the Exchange Action by failing to disclose whether any of the proposals or indications of interest proffered by Amphenol contemplated the retention of MTS management in the post-merger, combined company.

41.   These sorts of communications, regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction, are material and thus must be disclosed to stockholders.  The Company's stockholders need this information to understand conflicts that might plague either management or the Board.  Stated differently, this information is critical to allow stockholders to determine whether these fiduciaries are aggrandizing their own personal interests, or prioritizing the interests of the Company's stockholders.

42.   The omission of this information renders the statements in the "Background of the Merger" and "Interests of Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

43.   The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the Company's other stockholders will be precluded from making a sufficiently informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

### On Behalf of Plaintiff Against All Defendants for Violations of
### Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100

44.　Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.　Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

46.　Defendants issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Truist and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

47.　In so doing, defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the

Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

48.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and other financial matters.

49.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the

16

exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.    The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of PRGX, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of PRGX, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.    Each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

54.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual

Defendants' conduct, Plaintiff will be irreparably harmed.

57.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the defendants to account to Plaintiff for all damages suffered because of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  February 10, 2021

**WEISSLAW LLP**

/s/ Richard A. Acocelli

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**LONG LAW, LLC**
Brian D. Long
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Tel.: (302) 729-9100
bdlong@longlawde.com

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Tel.: (484) 324-6800
rmaniskas@rmclasslaw.com